1 | PETER M. ANGULO, ESQ.
ANGULO LAW GROUP, LLC
2 | 5545 Mountain Vista Street, Suite F
Las Vegas, Nevada 89120
3 | T: (702)-384-8000
F: (702)-384-8200
4 | Email: pangulo@angulolawgroup.com
Attorney for Plaintiff
5 | *Armando Hernandez*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ARMANDO HERNANDEZ, | CASE NO. |
| Plaintiff, | |
| v. | |
| | JURY TRIAL DEMANDED |
| DEPUY ORTHOPAEDICS, INC., JOHNSON & JOHNSON SERVICES, INC.,JOHNSON & JOHNSON, DEPUY INTERNATIONAL LIMITED and DEPUY PRODUCTS, INC., | SUBJECT TO TRANSFER TO MDL 244 |
| Defendants. | |

**COMPLAINT**

   **COMES NOW,** Plaintiff, ARMANDO HERNANDEZ, by and through his attorney of record, PETER M. ANGULO, ESQ., and for his Complaint against Defendants, alleges as follows:

**I.**

**INTRODUCTION AND PARTIES**

   1. The above captioned matter is a lawsuit over the defective hip replacement components designed, manufactured, distributed, sold and serviced by Defendants.

2.     The components at issue in this case were marketed by Defendants as the "DEPUY-PINNACLE" hip system, (hereafter "PINNACLE" OR "PINNACLE SYSTEM" OR "PINNACLE DEVICE")

3.     At all times relevant to this Complaint, ARMANDO HERNANDEZ, ("Plaintiff"), is a citizen of the State of Nevada and resides in the city of Las Vegas in Clark County Nevada.

4.     Defendant, DEPUY ORTHOPAEDICS, INC., is and at all times relevant to this Complaint is an Indiana Corporation with its principal place of business at 700 Orthopaedic Drive, Warsaw, Indiana 46581.  That DEPUY ORTHOPAEDICS, INC., was authorized to transact and carry out business and/or having directed its activities at Alaska, the state where Plaintiff resided when DEFENDANTS "PINNACLE DEVICE COMPONENTS" were implanted in Plaintiff's left hip.

5.     At all relevant times to this Complaint, DEPUY ORTHOPAEDICS INC., designed, manufactured, tested, marketed, distributed and sold the metal-on-metal PINNACLE DEVICE, either directly or indirectly, to customers throughout the United States, including Plaintiff.

6.     That Defendant, JOHNSON & JOHNSON SERVICES INC., is and at all times relevant to this Complaint was a New Jersey Corporation with its principal place of business at One Johnson & Johnson Plaza Brunswick, New Jersey 08933, and was the parent company of DEPUY ORTHOPAEDICS, INC.  That Defendant JOHNSON & JOHNSON is and was at all times relevant herein doing business in and/or having directed its activities at Alaska, the state where Plaintiff resided when DEFENDANTS "PINNACLE COMPONENTS" were surgically implanted in Plaintiff's left hip.

-2-

7. That Defendant, JOHNSON & JOHNSON, as the parent company of DEPUY ORTHOPAEDICS, INC., designed, manufactured, tested, advertised, marketed, distributed and sold the metal-on-metal Pinnacle Device, either directly or indirectly, to customers throughout the United States, including Plaintiff.

8. That Defendant DEPUY INTERNATIONAL LIMITED is, and at all times relevant to this Complaint was, a foreign corporation, and a citizen of the United Kingdom with its principal place of business at St. Anthony's Road, Leeds, LSH 8DT, England. That Defendant DEPUY INTERNATIONAL LIMITED is and was at all times relevant herein doing business in and/or having directed its activities at Alaska, the state where Plaintiff resided when DEFENDANTS "PINNACLE COMPONENTS" were surgically implanted in Plaintiff's left hip.

9. That Defendant, DEPUY INTERNATIONAL LIMITED, designed, manufactured, tested, advertised, marketed distributed and sold the metal-on-metal Pinnacle Device, either directly or indirectly, to customers throughout the United States, including Plaintiff.

10. That DEPUY PRODUCTS, INC., is, and at all times relevant to this Complaint was, an Indiana Corporation with its principal place of business at 700 Orthopaedic Drive, Warsaw, Indiana 46581.

11. That the true names and capacities of the Defendants designated herein as DOE or ROE Defendants are presently unknown to Plaintiff; therefore, Plaintiff sues said Defendants by such fictitious names, and when their true names and capacities are ascertained, Plaintiff will seek leave to amend his Complaint to insert same herein; that Plaintiff believes and alleges that Doe and Roe Defendants are in some manner liable to Plaintiff for his injuries complained of herein.

**II.**

**JURISDICTION AND VENUE**

12.     That by Transfer Order dated May 24, 2011, the Judicial Panel on Multidistrict Litigation created MDL, 2244, In Re: Depuy Orthopaedics, Inc., Pinnacle Hip Implant Products Liability Litigation in order to facilitate centralized pretrial proceedings for cases filed in Federal Court relating to the medical device at issue in this case.

13.     That the Judicial Panel on Multidistrict Litigation selected the Northern District of Texas as the appropriate transferee district for MDL 2244.

14.     But for the existence of MDL 2244, venue for this action would be proper in, and Plaintiff would have brought this action in, the United States District Court of Nevada where he currently resides and had the revision surgery to remove the defective DEPUY PINNACLE SYSTEM / COMPONENTS.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (c).

**III.**

**FACTUAL ALLEGATIONS**

**A.     The Pinnacle Device With An "Ultamet" Liner**

16.     The Pinnacle Device was developed for the purpose of reconstructing diseased human hip joints from conditions such as osteoarthritis, rheumatoid arthritis, avascular necrosis (AVN), fracture, and other degenerative conditions.  The hip joint connects the femur bone of a patient's leg to the patient's pelvis.  The hip joint is like a ball that fits in a socket. The socket portion of the hip is called the acetabulum.  The femoral head at the top of the femur bone rotates within the curved surface of the acetabulum.

17.     The Pinnacle Device is made up of the following components: a metal femoral stem that is inserted inside the femur bone, the metal femoral head (or ball) connects to the top

of the stem and then makes contact with a liner that is attached to the interior portion of the metal acetabulum cup (socket).  The acetabulum cup is comprised of titanium metal.  Either a plastic, ceramic, or cobalt-chromium metal liner is then placed on the inside of the acetabulum cup. The metal femoral head rotates within the plastic, ceramic, or metal liner, depending on which liner the surgeon selects based on the patient's needs.  The cobalt-chromium metal liner is branded by Defendants as the "Ultamet."  The Pinnacle Device with an Ultamet liner is a "metal-on-metal" device due to the fact that both articulating surfaces – the femoral head (ball) and acetabulum liner (socket) – are comprised of cobalt-chromium metal.

**B.** **Defendants Failed to Seek Premarket Approval From The FDA, And Thus The FDA Makes No Finding That The Pinnacle Device Is Safe Or Effective**

18.     The Pinnacle Device is a Class III medical device.  Class III devices are those that operate to sustain human life and in preventing impairment of human health that may pose unreasonable risks to patients.

19.     The Medical Device Amendments to the Food, Drug, and Cosmetics Act of 1938 requires Class III medical devices such as the DEPUY PINNACLE SYSTEM to undergo premarket approval by the FDA.  This process obligates the manufacturer to design and implement a clinical investigation and then provide any and all results of the clinical investigation to the FDA.

20.     Premarket approval requires a manufacturer to submit what is typically a multivolume application that must include the full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant such as; a full statement of the device's components, ingredients, and properties and of the principle or principles of operation; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when

relevant, packing and installation of, such device; samples or device components required by the FDA; and a specimen of the proposed labeling.

21.    The FDA may grant premarket approval only if there is reasonable assurance that the medical device is safe and effective and must weigh any probable benefit to health from the use of the device against any probable risk of injury or illness from such use.

22.    A medical device on the market prior to the effective date of the MDA – a so-called "grandfathered" device – was not required to undergo premarket approval.  In addition, a medical device marketed after the MDA's effective date may bypass the rigorous premarket approval process if the device is "substantially equivalent" to a "grandfathered" pre-MDA device (i.e., a device approved prior to May 28, 1976).  This exception to premarket approval is known as the "510(k)" process and simply requires the manufacturer to notify the FDA under section 510(k) of the MDA of its intent to market a device at least 90 days prior to the device's introduction on the market, and to explain the device's substantial equivalence to a pre-MDA predicate device.  The FDA may then approve the new device for sale in the United States.

23.    Rather than being approved for use by the FDA pursuant to the premarket approval process, the Pinnacle Device metal-on-metal total hip replacement system was certified to be sold on the basis of Defendants' claim that, under section 510(k) of the MDA, it was "substantially equivalent" to another older metal-on-metal hip implant device that Defendants sold and implanted prior to the enactment of the MDA in 1976.

24.    As such, under the 510(k) process, Defendants were able to market the Pinnacle Device without submitting any clinical and/or non-clinical trials to the FDA for review of the implant for safety and effectiveness.

**C.**     **Defendants Took No Steps To Test The Pinnacle Device Or They Would Have Discovered That It Leads To Metallosis And Other Complications Before Releasing It On The Market.**

25.     Had Defendants conducted clinical trials of the Pinnacle Device before it was first released on the market in the early 2000's, they would have discovered at that time what they ultimately learned in and around 2007 – that the Pinnacle Device results in a high percentage of patients developing metallosis, biologic toxicity and an early and high failure rate due to the release of metal particles in the patient's surrounding tissue when the cobalt-chromium metal formal head rotates within the cobalt-chromium metal acetabular liner.

26.     The implantation of the Pinnacle Device causes immediate systemic release of high levels of toxic metal cobalt-chromium ions into every patient's tissue and bloodstream. This is because cobalt-chromium metal particles are released by friction from the metal femoral head rotating within the metal liner which accumulate in the patient's tissue surrounding the implant which expose and cause the patient to metallosis, pseudotumors, or other conditions.

27.     The formation of metallosis, pseudotumors, and infection and inflammation causes severe pain and discomfort, death of surrounding tissue and bone loss, and a lack of mobility.

28.     On information and belief, Plaintiff alleges that the FDA has received more than 1,300 adverse reports regarding problems associated with or attributed to the Pinnacle Device.

29.     On information and belief, Plaintiff alleges that the ASR and the Pinnacle Device were designed by the same orthopaedic surgeon, Dr. Thomas Schmalzried.

30.     Defendants continue to sell the Pinnacle Device to doctors who implant them in countless numbers of patients with an unreasonably high percentage of those patients being forced to endure serious injury from metallosis, pseudotumors, and biologic toxicity, among

other complications, and represent to the public that they are safe. These patients are reporting severe pain and discomfort and the need for one or more complicated revision surgeries resulting in life-long health problems caused by the defective device.

**D.    Plaintiff Was Implanted With A Pinnacle Device And As A Result Has Suffered Severe Injuries**

31.    On or about January 31, 2013, Plaintiff, age 41, underwent a left total hip replacement surgery at Mat-Su Regional Medical Center in Palmer, Alaska following an industrial accident and injury. The surgical procedure was done by Gary Bennedeti, M.D., who implanted Plaintiff with a number of Depuy Pinnacle Hip Replacement Components. The Depuy Pinnacle components listed on the operative report are identified as; Depuy Corail size 16 high offset collarless stem, a Pinnacle Cup 40 x 56 mm., a metal-on-metal liner 48 x 50 and metal-on-metal femoral head 40 mm.

32.    Plaintiff continued to receive follow up medical care and treatment with Dr. Bennedeti who instructed the Plaintiff to start walking and increasing his daily activities so that he can return to his regular full duty employment / profession as an Asbestos Abatement Technician. That after five-month post surgery; Plaintiff continued to experience ongoing pain symptoms in the left lower extremity with increased weakness and radiating pain in the left thigh and groin. Dr. Benedeti released Plaintiff to return to work light duty on May 10, 2013.

33.    Plaintiff returned to light duty employment as directed and worked from May 10, 2013 through November of 2013. That said pain symptoms eventually began to worsen and restrict his ability to perform his light duty work. Plaintiff could no longer tolerate the increase of his pain symptoms and/or physically continue working light duty. That on or about November of 2013 Plaintiff sought further medical care / treatment.

34.    Plaintiff medical care and treatment was transferred to Russell T. Nevins, M.D., at Nevada Orthopedic & Spine Center in Las Vegas, Nevada.  Dr. Nevins examined the Plaintiff on November 18, 2013 and suggested that the Depuy Pinnacle metal-on-metal hip implant may be releasing elevated amounts of Cobalt and Chromium in Plaintiffs blood which cause swelling and pain in the area of Plaintiff's left total hip replacement.  Plaintiff underwent diagnostic blood testing and the Cobalt and Chromium levels were within normal limits.  Plaintiff was released to return to full duty employment with no restrictions on January 14, 2014 with instructions to return in one-year for further examination and/or return as needed should his physical condition and pain symptoms continue to worsen.

35.    Plaintiff returned to work full duty with no restrictions as an Asbestos Abatement Technician Supervisor.  Plaintiff continued to work with the same pain symptoms, weakness and numbness in the area of Plaintiff's left total hip replacement.  That on or about May of 2019 Plaintiff required the use of a walker / cane and was physically unable to work and/or engage in any of his normal active daily living activities such as bathing, dressing, grooming and/or participate in a sexual relationship with his wife.

36.    That as a result of the Pinnacle Device implanted in the Plaintiff, he is no-longer able to work in the trained and skilled profession as an Asbestos Abatement Technician and as a result has incurred loss of earnings and economic hardship from May of 2019 to present and will continue to suffer economic loss now and in the future.

37.    That on or about June of 2019, Plaintiff was made aware that the DEPUY PINNACLE SYSTEM / Metal-On-Metal hip replacement device may be on a nationwide recall as a defective product. Plaintiff consulted with Orthopedic Surgeon, Ronald Hillock, M.D., on November 07, 2019 at Nevada Orthopedic and Spine Center in Las Vegas, Nevada due to the worsening of Plaintiffs pain symptoms, decreased function and mobility of his

active daily living.  That Plaintiff underwent diagnostic testing of a 3-phase Bone Scan which revealed loosening of the DEPUY PINNACLE SYSTEM which would confirm and validate that Plaintiff's ongoing pain symptoms and physical restrictions were directly related and caused by the DEPUY PINNACLE SYSTEM DEVICE / IMPLANT. As a result, Plaintiff underwent a second opinion with Orthopedic Surgeon, Michael S. Bradford on February 20, 2020.  Dr. Bradford diagnosed Plaintiff as having loose / failed left total hip arthroplasty with metal-on-metal articulation and that Plaintiff required a total hip arthroplasty revision surgery / removal of the defective DEPUY PINNACLE SYSTEM.

38.    That all of the injuries and complications suffered by Plaintiff were caused by the defective design, warnings, construction and unreasonably dangerous character of the Pinnacle Device that was implanted in him.  Had Defendants not concealed the known defects, the early failure rate, the known complications and the unreasonable risks associated with the use of the Pinnacle Device, Plaintiff would not have consented to the Pinnacle Device being used in his total hip arthroplasty.

39.    Plaintiff was unaware of any causal link between the injuries he has suffered and any wrongdoing on the part of Defendants due to the faulty and defective nature of the Pinnacle Device, due in part to the failures of Defendants to properly warn him and his physicians about the Pinnacle Device's defective and faulty nature.  On or about June of 2019, Plaintiff first became aware of said causal link when he became aware of the recall of the ASR and realized that the issues he had with his Pinnacle Device were eerily similar to that which was being reported regarding the ASR.  Plaintiff was unable to make an earlier discovery of said causal link despite reasonable diligence because of Defendants' denial of issues, and failure to properly warn him and his physicians about the Pinnacle Device's defective and faulty nature, and their failure to issue any recall or take any other proactive action to date

with respect to the injuries being caused to patients that have been implanted with a Pinnacle Device. Defendants had a duty to inform the public of the problems with the Pinnacle Device and knowingly concealed the problems from the Plaintiff and public.

40.    Upon information and belief, the aforementioned defects with the Depuy Pinnacle System caused Plaintiff's Depuy Pinnacle System to fail prematurely, causing joint effusion, pain and numbness, muscle damage, left lower extremity weakness and further exposed Plaintiff to metallosis shedding in the joint tissue and/or metal toxins absorbed into the bloodstream.

41.    That Plaintiff suffered injuries as a result of the negligent design, manufacture, marketing and distribution of the Depuy Pinnacle System and hip component parts.

42.    As a direct and proximate result of the defective and failed Depuy Pinnacle System, Plaintiff was caused to incur medical expenses, and will continue to incur additional medical expenses in the future.

43.    That as a direct and proximate result of the defective and failed Depuy Pinnacle System, Plaintiff was caused to end his employment profession and career as a trained Asbestos Abatement Technician and has incurred wage loss from June of 2019 to present and will continue to suffer economic hardship / loss of earnings in the future.

44.    As a direct and proximate cause of the defective / failed Depuy Pinnacle System, Plaintiff was required to have a revision surgery / removal of the defective Depuy Pinnacle System and Hip Component Parts of the left hip, and now suffers from additional scar tissue, residual pain and discomfort, bone and muscle tissue loss, gait derangement of the left lower extremity, loss of active daily living and a left hip implant with decreased longevity.

45.    Plaintiff has suffered personal injuries / physical impairment and pain and suffering as a result of the defective Depuy Pinnacle System.  That Plaintiff continues to experience pain and suffering and will continue to experience pain and suffering in the future.

**IV.**

**FIRST CAUSE OF ACTION: NEGLIGENCE**
**(Against all Defendants)**

46.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

47.    Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Pinnacle Device into the stream of commerce, including a duty to assure that the device would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

48.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Pinnacle Device into interstate commerce in that Defendants knew or should have known that those individuals that had the device surgically implanted were at risk for suffering harmful effects from it including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

49.    The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a.    Negligently designing the Pinnacle Device in a manner which was dangerous to those individuals who had the device surgically implanted;

b.    Designing, manufacturing, producing, creating, and/or promoting the Pinnacle Device without adequately, sufficiently, or thoroughly testing it;

c.    Not conducting sufficient testing programs to determine whether or not the aforesaid Pinnacle Device was safe for use;

d.    Defendants herein knew or should have known that Pinnacle Device was unsafe and unfit for use by reason of the dangers to its users;

e.    Selling the Pinnacle Device without making proper and sufficient tests to determine the dangers to its users;

f.    Negligently failing to adequately and correctly warn Plaintiff or their physicians, hospitals and/or healthcare providers of the dangers of Pinnacle Device;

g.    Negligently failing to recall their dangerous and defective Pinnacle Device at the earliest date that it became known that the device was, in fact, dangerous and defective;

h.    Failing to provide adequate instructions regarding safety precautions to be observed by surgeons who would reasonably and foreseeably come into contact with, and more particularly, implant the Pinnacle Device into their patients;

i.    Negligently advertising and recommending the use of the Pinnacle Device despite the fact that Defendant knew or should have known of its dangerous propensities;

j.    Negligently representing that the Pinnacle Device offered was safe for use for its intended purpose, when, in fact, it was unsafe;

k.    Negligently manufacturing the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

-13-

l.      Negligently producing the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

m.      Negligently assembling the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

n.      Defendants under-reported, concealed important relevant information, underestimated and downplayed the serious danger of the Pinnacle Device.

50.      Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the Pinnacle Device in that they:

a.      Failed to use due care in designing and manufacturing the Pinnacle Device so as to avoid the aforementioned risks to individuals that had the devices surgically implanted;

b.      Failed to accompany their product with proper warnings;

c.      Failed to accompany their product with proper instructions for use;

d.      Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Pinnacle Device;

51.      Despite the fact that Defendants knew or should have known that the Pinnacle Device caused harm to individuals that had the device surgically implanted, Defendants continued to market, manufacture, distribute and/or sell the Pinnacle Device.

52.      Defendants knew or should have known that consumers such as Plaintiff would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

53.      Defendants' negligence was the proximate cause of Plaintiff's physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer.

54.     By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the past need for a revision surgery to replace the device with the attendant risks of complications and death from such surgery.

55.     In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## V.

## SECOND CAUSE OF ACTION: STRICT PRODUCTS LIABILITY: (MANUFACTURING DEFECT) (Against All Defendants)

56.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

57.     Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Device.

58.     The Pinnacle Device that was surgically implanted in Plaintiff was defective in its manufacture when it left the hands of Defendants in that it deviated from product specifications, posing a serious risk that it could fail early in patients therefore giving rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

59.     As a direct and proximate result of Defendants' placement of the defective Pinnacle Device into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of

range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

60.    In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## VI.

## THIRD CAUSE OF ACTION - STRICT LIABILITY: DESIGN DEFECT
### (All Defendants)

61.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

62.    Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Pinnacle Device into the stream of commerce, including a duty to assure that the device would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

63.    Defendants failed to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Pinnacle Device into interstate commerce in that Defendants knew or should have known that those individuals that had the device surgically implanted were at risk for suffering harmful effects from it including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish,

including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

64.    The negligence of Defendants, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a.    Negligently designing the Pinnacle Device in a manner which was dangerous to those individuals who had the device surgically implanted;

b.    Designing, manufacturing, producing, creating, and/or promoting the Pinnacle Device without adequately, sufficiently, or thoroughly testing it;

c.    Not conducting sufficient testing programs to determine whether or not the aforesaid Pinnacle Device was safe for use;

d.    Defendants herein knew or should have known that Pinnacle Device was unsafe and unfit for use by reason of the dangers to its users;

e.    Selling the Pinnacle Device without making proper and sufficient tests to determine the dangers to its users;

f.    Negligently failing to adequately and correctly warn Plaintiff or their physicians, hospitals and/or healthcare providers of the dangers of Pinnacle Device;

g.    Negligently failing to recall their dangerous and defective Pinnacle Device at the earliest date that it became known that the device was, in fact, dangerous and defective;

h.    Failing to provide adequate instructions regarding safety precautions to be observed by surgeons who would reasonably and foreseeably come into contact with, and more particularly, implant the Pinnacle Device into their patients;

i.    Negligently advertising and recommending the use of the Pinnacle Device despite the fact Defendants knew or should have known of its dangerous propensities;

j.      Negligently representing that the Pinnacle Device offered was safe for use for its intended purpose, when, in fact, it was unsafe;

k.      Negligently manufacturing the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

l.      Negligently producing the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

m.      Negligently assembling the Pinnacle Device in a manner which was dangerous to those individuals who had it implanted;

n.      Defendants under-reported, concealed important relevant information, underestimated and downplayed the serious danger of the Pinnacle Device.

65. Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of the Pinnacle Device in that they:

a.      Failed to use due care in designing and manufacturing the Pinnacle Device so as to avoid the aforementioned risks to individuals that had the devices surgically implanted;

b.      Failed to accompany their product with proper warnings;

c.      Failed to accompany their product with proper instructions for use;

d.      Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Pinnacle Device;

66. Despite the fact that Defendants knew or should have known that the Pinnacle Device caused harm to individuals that had the device surgically implanted, Defendants continued to market, manufacture, distribute and/or sell the Pinnacle Device.

67.  Defendants knew or should have known that consumers such as Plaintiff would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

68.  Defendants' negligence was the proximate cause of Plaintiff's physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer.

69.  By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the past need for a revision surgery to replace the device with the attendant risks of complications and death from such surgery.

70.  In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

71.  Defendants' negligence was the proximate cause of Plaintiff's physical, mental and emotional injuries and harm, and economic loss which he has suffered and/or will continue to suffer.

72.  By reason of the foregoing, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the past need for a revision surgery to replace the device with the attendant risks of complications and death from such surgery.

73.     In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

**VII.**

**FOURTH CAUSE OF ACTION: STRICT PRODUCTS LIABILITY
(INADEQUATE WARNING)
(Against All Defendants)**

74.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

75.     Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Device.

76.     The Pinnacle Device placed into the stream of commerce by Defendants was defective due to inadequate warning, because Defendants knew or should have known that the Pinnacle Device could fail early in patients therefore give rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery, but failed to give consumers adequate warning of such risks.  Further, the Pinnacle Device placed into the stream of commerce by Defendants was surgically implanted in a manner reasonably anticipated by Defendants.

77.     As a direct and proximate result of Defendants' placement of the defective Pinnacle Device into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life,

as well as the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

78.    Further, as a result of the foregoing acts and omissions, Plaintiff suffered a loss of wages and will in the future suffer a diminished capacity to earn wages.

79.    In performing the foregoing acts and omissions, Defendants acted despicably, fraudulently, and with malice and oppression so as to justify an award of punitive and exemplary damages.

## VIII.

### FIFTH CAUSE OF ACTION: BREACH OF EXPRESS WARRANTY
### (Against All Defendants)

80.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

81.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Device.

82.    Defendants expressly warranted that the Pinnacle Device was a safe and effective hip replacement system.

83.    The Pinnacle Device placed into the stream of commerce by Defendants did not conform to these express representations because they failed early thereby giving rise to unnecessary physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery.

84.    As a direct and proximate result of Defendants' breach of express warranties regarding the safety and effectiveness of the Pinnacle Device, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and

suffering, and the need for past revision surgery to replace the faulty device, and will continue to suffer such damages in the future.

85.    In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

## IX.

### SIXTH CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY
### (All Defendants)

86.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

87.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Device.

88.    At the time Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Pinnacle Device, Defendants knew the use for which the Pinnacle Device was intended, and impliedly warranted the Pinnacle Device to be of merchantable quality and safe for such use.

89.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the Pinnacle Device was of merchantable quality and safe for its intended use.

90.    Contrary to Defendants' implied warranties, the Pinnacle Device was not of merchantable quality or safe for its intended use, because the Pinnacle Device was unreasonably dangerous as described above.

91.    As a direct and proximate result of Defendants' breach of implied warranties regarding the safety and effectiveness of the Pinnacle Device, Plaintiff has suffered significant damages, including but not limited to physical injury, economic loss, pain and

suffering, and the need for past revision surgery to replace the faulty device, and will continue to suffer such damages in the future.

92.     In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

**X.**

**SEVENTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION**
**(Against All Defendants)**

93.     Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

94.     The Defendants supplied false information to the public, to Plaintiff and to his physicians regarding the high-quality, safety and effectiveness of the Pinnacle Device. Defendants provided this false information to induce the public, Plaintiff and his physicians to purchase and implant a Pinnacle Device.

95.     The Defendants knew or should have known that the information they supplied regarding the purported high-quality, safety and effectiveness of the implant to induce Plaintiff and his physicians to purchase and use a Pinnacle Device was false.

96.     The Defendants were negligent in obtaining or communicating false information regarding the purported high-quality, safety and effectiveness of the Pinnacle Device.

97.     Plaintiff and his physicians relied on the false information supplied by the Defendants to his detriment by causing the Pinnacle Device to be purchased and implanted in Plaintiff.

98.     Plaintiff and his physicians were justified in their reliance on the false information supplied by the Defendants regarding the purported high-quality, safety and effectiveness of the Pinnacle Device.

99.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff has suffered significant damages, including but not limited to permanent physical injury, economic loss, pain and suffering and the need past revision surgery to repair the physical damage to Plaintiff caused by the Pinnacle Device.

## XI.

### EIGHTH CAUSE OF ACTION: FRAUD
### (Against All Defendants)

100.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

101.    Defendants made representations to Plaintiff and his physicians that their Pinnacle Device is a high-quality, safe and effective hip replacement system.

102.    Before they marketed the Pinnacle Device that was implanted in Plaintiff, Defendants knew or should have known of the unreasonable dangers and serious health risks that such a metal-on-metal total hip replacement system posed to patients like Plaintiff.

103.    As specifically described in detail above, Defendants knew that the Pinnacle Device subjected patients to early failure, painful and harmful physical reactions to toxic metallic particles and ions, death of tissue, bone loss and the need for explants and revision surgery.

104.    Defendants' representations to Plaintiff and his physicians that their Pinnacle Device is high-quality, safe and effective were false.

105.    Defendants concealed their knowledge of the unreasonable risks and dangers associated with the use of the Pinnacle Device to induce Plaintiff and many thousands of others to purchase the system for surgical implantation in their bodies.

106.    Neither Plaintiff nor his physicians knew of the falsity of Defendants' statements regarding the Pinnacle Device.

107. Plaintiff and his physicians relied upon and accepted as truthful Defendants' representations regarding the Pinnacle Device.

108. Plaintiff and his physicians had a right to rely on Defendants' representations and in fact did rely upon such representations. Had Plaintiff known that the Pinnacle Device would fail early and expose him to the unreasonable risk of toxic metals, metallosis, and revision surgeries he would not have purchased or allowed the Pinnacle Device to have been surgically implanted in him.

109. As a direct and proximate result of Defendants' fraudulent representations, Plaintiff has suffered significant damages, including but not limited to permanent physical injury, economic loss, pain and suffering and the need for past revision surgeries to repair the physical damage to Plaintiff caused by the Pinnacle Device.

## XII.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully requests that a jury be impaneled to hear this case as fully stated herein and to award such damages as the jury finds to be fair and reasonable.

## XIII.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

A. Judgment in favor of Plaintiff and against all Defendants, for damages in such amounts as may be proven at trial;

B. Compensation for both economic and non-economic losses, including but not limited to medical expenses, past and future loss of earnings, disfigurement and permanent impairment, past and future pain and suffering, mental anguish and emotional distress, in such amounts as may be proven at trial;

-25-

C.    Punitive and/or exemplary damages in such amounts as may be proven at trial;

D.    Attorneys' fees and costs;

E.    Pre- and post-judgment interest; and

F.    Any and all further relief, both legal and equitable, that the Court may deem just and proper.

DATED this _2_ day of February, 2021.

ANGULO LAW GROUP, LLC.

By _____
PETER M. ANGULO, ESQ.
5545 S. Mountain Vista Street, Suite F
Las Vegas, Nevada  89120
Attorney for Plaintiff

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ARMANDO HERNANDEZ,

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Peter M. Angulo, Esq., Angulo Law Group, LLC, 5545 S.
Mountain Vista Street, Las Vegas, NV 89120 (702)

## DEFENDANTS

DEPUY ORTHOPAEDICS, INC., JOHNSON & JOHNSON
SERVICES, INC., et al.

County of Residence of First Listed Defendant    Indiana
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 340 Marine ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | Protection Act |
| ☐ 195 Contract Product Liability | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act ☐ 751 Family and Medical | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | Exchange ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | Income Security Act | **FEDERAL TAX SUITS** | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | Act/Review or Appeal of Agency Decision |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332
Brief description of cause:
Products liability/Breach of Warranty

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $ _____    CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    2/3/01

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | | |
|---|---|---|
| ARMANDO HERNANDEZ, | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No. 2:21-CV-189 |
| DEPUY ORTHOPAEDICS, INC., JOHNSON & | ) | |
| JOHNSON SERVICES, INC., JOHNSON & | ) | |
| JOHNSON, DEPUY INTERNATIONAL LIMITED and | ) | |
| DEPUY PRODUCTS, INC., | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Depuy Orthopaedics, Inc.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Peter M. Angulo, Esq., 5545 S. Mountain Vista Street, Suite F, Las Vegas, Nevada
89120

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: 

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 2:21-CV-189

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                              *Server's signature*


                                        _____
                                              *Printed name and title*


                                        _____
                                              *Server's address*


Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | |
|---|---|
| ARMANDO HERNANDEZ, | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| DEPUY ORTHOPAEDICS, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, DEPUY INTERNATIONAL LIMITED and DEPUY PRODUCTS, INC., | ) |
| *Defendant(s)* | ) |

Civil Action No. 2:21-CV-189

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Johnson & Johnson Services, Inc.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Peter M. Angulo, Esq., 5545 S. Mountain Vista Street, Suite F, Las Vegas, Nevada 89120

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 2:21-CV-189

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $　0.00　.

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | |
|---|---|
| ARMANDO HERNANDEZ, | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| DEPUY ORTHOPAEDICS, INC., JOHNSON & | ) |
| JOHNSON SERVICES, INC., JOHNSON & | ) |
| JOHNSON, DEPUY INTERNATIONAL LIMITED and | ) |
| DEPUY PRODUCTS, INC., | ) |
| | ) |
| *Defendant(s)* | ) |

Civil Action No. 2:21-CV-189

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Johnson & Johnson

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Peter M. Angulo, Esq., 5545 S. Mountain Vista Street, Suite F, Las Vegas, Nevada
89120

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. 2:21-CV-189

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

□ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | |
|---|---|
| ARMANDO HERNANDEZ,<br><br>_____<br>*Plaintiff(s)*<br><br>v.<br><br>DEPUY ORTHOPAEDICS, INC., JOHNSON &<br>JOHNSON SERVICES, INC., JOHNSON &<br>JOHNSON, DEPUY INTERNATIONAL LIMITED and<br>DEPUY PRODUCTS, INC.,<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 2:21-CV-189

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Depuy International Limited

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Peter M. Angulo, Esq., 5545 S. Mountain Vista Street, Suite F, Las Vegas, Nevada 89120

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

Civil Action No. 2:21-CV-189

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)*                            .

☐ I personally served the summons on the individual at *(place)*

on *(date)*                    ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on *(date)*                    , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)*                            , who is

designated by law to accept service of process on behalf of *(name of organization)*

on *(date)*                    ; or

☐ I returned the summons unexecuted because                            ; or

☐ Other *(specify):*


My fees are $            for travel and $            for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.


Date:

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Nevada

| | |
|---|---|
| ARMANDO HERNANDEZ, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| DEPUY ORTHOPAEDICS, INC., JOHNSON & JOHNSON SERVICES, INC., JOHNSON & JOHNSON, DEPUY INTERNATIONAL LIMITED and DEPUY PRODUCTS, INC., | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

Civil Action No. 2:21-CV-189

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Depuy Products, Inc.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Peter M. Angulo, Esq., 5545 S. Mountain Vista Street, Suite F, Las Vegas, Nevada 89120

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 2:21-CV-189

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

□ I personally served the summons on the individual at *(place)*
_____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)*
_____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: